CAVALIER MANUFACTURING COMPANY v EMPLOYERS
INSURANCE OF WAUSAU

Docket No. 158681. Submitted January 17, 1995, at Detroit. Decided
June 2, 1995, at 9:30 A.M. Leave to appeal sought.

Cavalier Manufacturing Company brought an action in the Oak-
land Circuit Court against Employers Insurance of Wausau,
Cavalier's primary liability insurer; Bituminous Casualty Com-
pany, Cavalier's excess liability insurer; and Virginia Durand, a
Cavalier employee who lost her hands in an accident involving
a power press at work, seeking a declaration concerning the
insurers' obligations to Cavalier after Cavalier and Durand
consented to the entry of a judgment in favor of Durand in an
action in which Durand had alleged intentional tort by Cava-
lier in order to avoid the exclusive remedy of worker's compen-
sation. The court, Barry L. Howard, J., granted summary
disposition for the insurers, ruling that coverage was excluded
under the Wausau policy exclusion for bodily injury intention-
ally caused or aggravated by the insured. Cavalier appealed.

The Court of Appeals *held:*

The insurance policy exclusion at issue in this case applies
where there is both an intentional act and an intentionally
caused injury. In contrast, the intentional tort exception to the
exclusive remedy of worker's compensation applies where an
employer commits a deliberate act, specifically intending an
injury, or where the employer has actual knowledge that an
injury is certain to occur and wilfully disregards that knowl-
edge. Thus, a workplace injury that falls within the exception
to the exclusive remedy of worker's compensation also falls
within the insurance policy exclusion only where the employer
acted by design to cause the specific injury. Where the injury
merely resulted from the employer's disregard of actual knowl-
edge of the certainty of injury, the injury does not fall within
the insurance policy exclusion.

In Durand's action against Cavalier, it was not established
whether Cavalier had acted by design to cause the specific

References

Am Jur 2d, Workers' Compensation §§ 62-64, 75.
See ALR Index under Workers' Compensation.

injury or whether Cavalier merely had disregarded actual knowledge of the certainty of injury. Accordingly, the order of summary disposition for the insurers must be vacated and the case must be remanded for further proceedings.

Order of summary disposition vacated and case remanded for further proceedings.

INSURANCE — LIABILITY — INTENTIONAL ACTS EXCLUSION — WORKER'S COMPENSATION — INTENTIONAL TORTS.

The general liability insurer of an employer, with respect to a judgment obtained by an employee in an action for personal injury sustained at work, may invoke an exclusion for bodily injury intentionally caused or aggravated by the insured where the employee's action avoids the exclusive remedy of worker's compensation on the basis of a deliberate act by the employer to cause the specific injury; the exclusion may not be invoked where the action avoids the exclusive remedy of worker's compensation on the basis of the employer's wilful disregard of actual knowledge of the certainty of injury (MCL 418.131[1]; MSA 17.237[131][1]).

*Mark Granzotto* and *Sheldon D. Erlich,* for Cavalier Manufacturing Company.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Thomas L. Misuraca* and *Robert D. Goldstein*), for Employers Insurance of Wausau.

*Lacey & Jones* (by *Michael T. Reinholm*), for Bituminous Casualty Company.

Before: CORRIGAN, P.J., and O'CONNELL and G. S. ALLEN,* JJ.

O'CONNELL, J. Plaintiff employer appeals as of right the trial court's grant of summary disposition in favor of defendant insurance companies. We vacate the order granting summary disposition and remand for further proceedings.

Employers Insurance of Wausau provided plain-

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

tiff with worker's compensation and employer's liability insurance, and Bituminous Casualty Company provided excess coverage. Plaintiff brought a declaratory action to determine whether defendants were liable for a judgment entered against plaintiff in favor of employee Virginia Durand under the policies they issued to plaintiff.

On July 25, 1988, Virginia Durand lost both of her hands during the course of her employment with plaintiff when an industrial press "double tripped" while Durand was removing stamped product from the press. Durand brought suit against plaintiff in the Oakland Circuit Court. In order to avoid the exclusive remedy provision of the Worker's Disability Compensation Act (WDCA), MCL 418.131(1); MSA 17.237(131)(1), Durand claimed that plaintiff's actions and knowledge constituted an intentional tort as that term is used in the WDCA. She alleged that plaintiff had previously been cited by the Department of Labor, Bureau of Safety and Regulation, for violations of the Michigan Occupational Safety and Health Act (MIOSHA), MCL 408.1001 *et seq.*; MSA 17.50(1) *et seq.,* on several occasions, and that plaintiff had failed to properly instruct and train its employees not to place their hands in the die "despite having knowledge of the dangers" and having "actual knowledge of the MIOSHA statutes prohibiting hands in die operation." She further alleged that plaintiff "specifically required hands in die operation" by its employees, and that no tongs were available to Durand while she was operating the press. Finally, she claimed that plaintiff negligently welded a bolt to a sprocket that partially controlled the timing of the press, and that the bolt broke, thereby causing the press to double trip.

Durand contended that this knowledge and ac-

tion by the plaintiff constituted an intentional tort within the meaning of the WDCA. Where plaintiff had "actual knowledge of the potential catastrophic injuries to employees who placed their hands in the dies of the power press" and wilfully disregarded this knowledge despite being aware of a prior injury to another employee, plaintiff was alleged to have had "actual knowledge that an injury was certain to occur." Durand's complaint concluded that the facts and circumstances established "an intentional act to injure" on plaintiff's part.

Plaintiff moved for summary disposition, contending that Durand's suit was barred by the exclusive remedy provision of the worker's compensation act. The relevant provision of the WDCA provides that "[t]he right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury. . . . The only exception to this exclusive remedy is an intentional tort." MCL 418.131(1); MSA 17.237(131)(1). The circuit court ruled that Durand's allegations, if proven, would establish an intentional tort on the part of plaintiff within the meaning of the WDCA, and accordingly denied plaintiff's motion. After this ruling, Wausau, plaintiff's liability insurer, terminated its defense of plaintiff on the basis of an intentional acts exclusion in its policy.[1]

Several months later, Durand and plaintiff entered into a consent judgment, ending the prosecution of that action. However, shortly before entry of the consent judgment, plaintiff filed a declaratory action to determine whether its policy with

[1] This seems to us to be a confusion of an insurer's duty to defend with its duty to indemnify. The better practice is to continue to defend until it is established that the actions alleged do, in fact, constitute a "true intentional tort." *American Bumper & Mfg Co v Hartford Fire Ins Co,* 207 Mich App 60, 66-67; 523 NW2d 841 (1994).

Wausau encompassed its liability to Durand. Defendants moved for summary disposition on the basis of the intentional acts exclusion. That exclusion denies coverage for "bodily injury intentionally caused or aggravated by [plaintiff]." The circuit court granted the insurance companies' motion, ruling that, where an employee alleges acts sufficient to constitute an intentional tort within the meaning of the WDCA, then, by definition, these same allegations necessarily constitute "bodily injury intentionally caused" within the meaning of the insurance policy exclusion. Plaintiff has appealed.

The issue on appeal is a narrow one. We must determine whether an intentional tort, as that term is defined in the WDCA, is identical to "bodily injury intentionally caused,"[2] as that term is defined in the insurance contract. We hold that it is not.

### THE WAUSAU POLICY EXCLUSION

We first examine the exclusion in the Wausau policy, which, as mentioned above, states that "[t]his insurance does not cover . . . bodily injury intentionally caused or aggravated by [plaintiff]." At issue in the present case is the "intentionally caused" language.[3]

As summarized in *Allstate Ins Co v Freeman*, 432 Mich 656, 664-665; 443 NW2d 734 (1989) (opinion of RILEY, J.), the terms of an insurance contract are interpreted according to the definitions set forth therein or, if none are provided, are given

[2] For purposes of the present discussion, we ignore the issue of "occupational disease," concentrating only on "personal injury." MCL 418.131(1); MSA 17.237(131)(1).

[3] The WDCA's "personal injury" is similar to the "bodily injury" of Wausau's policy. Because the terms are not in issue, we treat them as identical for purposes of this appeal.

a meaning in accordance with their common usage. While ambiguities in a policy are generally construed in favor of the insured, the Court will not create ambiguities where none exist. *Id.*

This Court has had occasion to interpret language virtually identical to that presently in issue, and we have concluded that "such a[n exclusionary] provision 'requires both an intentional act and an intentionally caused injury,' before the insurer is relieved of its duty to defend or provide coverage." *Transamerica Ins Co v Anderson,* 159 Mich App 441, 444; 407 NW2d 27 (1987), quoting *Linebaugh v Berdish,* 144 Mich App 750, 755; 376 NW2d 400 (1985). Therefore, to fall within the exclusion of Wausau's policy, two circumstances must exist. First, the employer must intentionally commit an act, and, second, the intention underlying that act must be to cause injury.

### INTENTIONAL TORTS UNDER THE WDCA

We now turn to § 131(1) of the WDCA, which provides as follows:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.

While it may not at first be apparent, § 131(1) recognizes two distinct types of "intentional torts." Under the third sentence of § 131(1), a plaintiff may establish what is generally regarded as a "true intentional tort," that is, one in which the employer "specifically intended an injury." Under the fourth sentence, an employee may establish an intentional tort without demonstrating an intent to injure by demonstrating instead that "the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge."[4] Since intent is not required, the denomination "intentional tort" is something of a misnomer. This alternative standard adopted by our Legislature was intended to be much closer, but not identical, to the "true intentional tort" standard than the standard adopted in *Beauchamp v Dow Chemical Co,* 427 Mich 1; 398 NW2d 882 (1986).

In fact, the intentional tort exception[5] set forth above constitutes the legislative reaction to *Beauchamp.* In *Beauchamp,* our Supreme Court held that the exclusive remedy provision of the WDCA did not bar an action by an employee against an employer for an intentional tort, and recognized the "substantial certainty" test to determine whether an employer had committed an intentional tort within the meaning of the WDCA. *Agee v Ford Motor Co,* 208 Mich App 363; 528 NW2d 768 (1995); *Schefsky v Evening News Ass'n,* 169 Mich App 223, 226; 425 NW2d 768 (1988).

In finding that an intentional tort situation was not covered by the exclusive remedy provision of the WDCA, *Beauchamp* recognized two standards

---

[4] The fourth sentence provides a legislatively created intent to injure (hereinafter a faux intent). The sentence legally defines an intent to injure when in fact no such intent actually exists.

[5] 1987 PA 28 (effective May 14, 1987).

for determining the existence of an intentional tort. *Beauchamp* rejected the "true intentional tort" standard, which limited an employee's recovery to situations where an employer truly intended the injury, as well as the act that resulted in the specific injury. *Beauchamp* instead adopted the "substantial certainty" standard, permitting recovery where the employer intended the act that caused the injury and knew that the injury was substantially certain to result from the act. *Beauchamp* did, however, stress that "substantial" certainty should not be equated with the lesser showing of substantial likelihood. *Beauchamp, supra,* p 25.

The swift legislative response to *Beauchamp* was to require a much more rigorous standard than that of "substantial certainty." *Agee, supra,* p 365; *Schefsky, supra,* pp 227-228. As recently stated by our Supreme Court in *Detroit v Walker,* 445 Mich 682, 697; 520 NW2d 135 (1994):

> It is well settled by this Court that when an amendment is enacted soon after controversies arise regarding the meaning of the original act, " 'it is logical to regard the amendment as a legislative interpretation of the original act . . . .' " *Detroit Edison Co v Revenue Dep't,* 320 Mich 506, 519-521; 31 NW2d 809 (1948), quoting 1 Sutherland, Statutory Construction (3d ed), § 1931, p 418.

Therefore, the Legislature's amendment of § 131(1), rendered in *Beauchamp*'s wake, can only be construed as an express elevation of the standard. Further, the Legislature's choice not to mitigate its certainty requirement, such as by requiring "virtual" certainty, indicates that it intended the new standard to be much more stringent.

To date, the published decisions of this Court

finding a basis for tort liability within the intentional tort exception to the exclusive remedy provision, § 131 of the WDCA, involve the legislatively created alternative to "true intentional torts." See *Travis v Dreis & Krump Mfg Co,* 207 Mich App 1; 523 NW2d 818 (1994); *Zuke v Fritz Enterprises, Inc,* 202 Mich App 572; 509 NW2d 787 (1993); *Adams v Shepherd Products, US, Inc,* 187 Mich App 695; 468 NW2d 332 (1991); *McNees v Cedar Springs Stamping Co,* 184 Mich App 101; 457 NW2d 68 (1990). In order to avoid the bar of the exclusive remedy provision of the WDCA, each of these decisions has as its foundation one of two factual situations. Either the employee was unable to avoid the injury despite the exercise of due care or the employee was deprived of the opportunity to use due care by the employer's concealment of information concerning the existence or nature of the risk. Thus, in *Adams, supra,* the employee was required to remove finished parts from a basket located adjacent to a spinning saw blade, positioned in such fashion that the basket and blade were not directly visible to the employee. Having, in effect, to work "in the dark," the employee was subject to unavoidable danger of injury that the exercise of due care could not prevent (e.g., the employee could not turn off the power to the saw). *Adams, supra,* pp 697-698.

Similarly, in *Zuke, supra,* employees were exposed to bombardment by pieces of scrap metal, without suitable heavy wire cages or other protection on the motorized equipment they were required to use. *Zuke, supra,* p 575. In *Travis, supra,* an inexperienced employee was required to work on a defective press, without being told of the tendency of the press to double cycle or being given instruction or training on avoiding or reducing the danger. *Travis, supra,* pp 3-4. The em-

ployer in *McNees* allegedly concealed knowledge of a mechanical defect presenting danger to the operator and then destroyed the evidence in anticipation of litigation.

No cases published after *Beauchamp* deal with "true intentional torts." However, even before *Beauchamp,* it was recognized that an employer cannot deliberately harm an employee, as by assault and battery, and expect to limit liability exposure to the benefits afforded by the WDCA. *Horvath v La Fond,* 305 Mich 69; 8 NW2d 915 (1943); see also *Harrison v Tireman & Colfax Bump & Repair Shop,* 395 Mich 48; 232 NW2d 274 (1975).

"True intentional torts," for which both worker's compensation benefits and tort damages might be awarded, *Seals v Henry Ford Hosp,* 123 Mich App 329; 333 NW2d 272 (1983); *Kissinger v Mannor,* 92 Mich App 572; 285 NW2d 214 (1979), are generally those that do not implicate the hazards of the workplace,[6] but rather involve other interests, such as those in reputation (defamation), liberty (false imprisonment or malicious prosecution), or discrimination (race, gender, or national origin). *Adams v Nat'l Bank of Detroit,* 444 Mich 329; 508 NW2d 464 (1993); *Moore v Federal Dep't Stores Inc,* 33 Mich App 556; 190 NW2d 262 (1971); *Boscaglia v Michigan Bell Telephone Co,* 420 Mich 308, 315; 362 NW2d 642 (1984). In all such cases, proof of actual intent to perpetrate tortious injury is a prerequisite to liability. *Nat'l Bank of Detroit, supra,* p 366 (plurality opinion of BRICKLEY, J). Thus, these true intentional torts must be proven under the first set of alternative requirements.

---

[6] Generally, with the exception of assault and battery, true intentional torts do not involve physical injury caused by the hazards of the workplace. It is the rare case where an employer specifically intends a specific physical injury.

In the case at bar, the allegations in Virginia Durand's original Oakland Circuit Court complaint against Cavalier Manufacturing alleged facts more or less consistent with the rule of *Adams, Zuke,* and *Travis, supra.* This Court never made a determination with regard to the sufficiency of the allegations in those cases, and does not purport to do so with respect to the case at hand.[7] For present purposes, we simply recognize that the Oakland Circuit Court, in denying summary disposition, was exercising its authority under the exclusive remedy provision to rule on whether the facts alleged, if proved, would establish an intentional tort in avoidance of the statutory bar to employer tort liability. *Adams, supra,* pp 696-697; *Zuke, supra,* p 576. The case never went to trial, and the facts were never adjudicated, so even if collateral estoppel or other preclusive doctrine might make the factual determinations in the initial suit by Durand applicable to the present case, there are no such judicial findings. But, even if Durand proved her case, she would not have established a "true intentional tort." Durand made no allegations that either Cavalier Manufacturing Company as a juridical entity, or any individual agent of the corporation, *Smith v General Motors Corp,* 192 Mich App 652, 657; 481 NW2d 819 (1992), actually harbored an intent to injure her. Thus, since Durand has not alleged that plaintiff actually harbored an intent to injure her, her burden is to demonstrate that plaintiff had actual knowledge that her injury was certain to occur, and that plaintiff wilfully disregarded that knowledge.

The conceptual difficulty that bedevils presentation of the present case is attributable to the use

---

[7] On the basis of the incomplete appellate record, we would conclude that this injury does not qualify as an intentional tort under the WDCA.

of virtually identical terminology in the exclusive remedy provision of the WDCA and in the appellee's insurance policies to describe two different things. The phenomenon of identical words meaning different things, even in a single document, such as an insurance contract or statute, let alone in two separate documents, is neither unique to the case at bar nor to the elasticity and inherent limitations of the English language. *Nat'l Organization for Women, Inc v Scheidler,* — US —; 114 S Ct 798; 127 L Ed 2d 99, 109 (1994) (recognizing that the statutory term "enterprise" in 18 USC 1962 [a] and [b] does not import an economic motive that is required in conjunction with the term "enterprise" in 1962[c] because "enterprise" was used in two different senses in the different subparagraphs). Applying this principle to the present case, it can be seen that "intentional tort" as used in § 131 of the WDCA, as has already been established *supra,* has two related, but nonetheless distinct, meanings: (1) that of "true intentional tort" and (2) that of a legislatively formulated equivalent—applicable only to establishing tort liability in avoidance of the exclusive remedy provision—where an employer wilfully disregards knowledge of a situation in which injury is "certain" to occur. In the insurance policy here in question, however, the exclusion relates to "true intentional torts." The insurance policy exclusion overlaps only partially with the residual tort liability recognized for purposes of the exclusive remedy of worker's compensation.

This conclusion is consistent with the doctrine of "reasonable expectation," which is an adjunct to the rules of construction for insurance contracts. *Vanguard Ins Co v Clarke,* 438 Mich 463; 475

NW2d 48 (1991). Businesses, aware of their obligations under the WDCA and of the residual tort liability that remains under § 131, as was Cavalier Manufacturing Company in the case at bar, reasonably purchase both a worker's disability compensation insurance policy and a general liability policy. Given the bar of the exclusive remedy provision of the WDCA, however, the only potential liability for which the insurance afforded by a general liability policy would be relevant is that for intentional torts.

While public policy considerations may militate against recognizing the validity of insurance for "true intentional torts," or at least would counsel against deeming exclusions for such liability as frustrating the reasonable expectations of the insured, an exclusion for tort liability arising from mere recklessness, as in *McNees, Adams, Zuke,* and *Travis, supra,* would be contrary to the insured's reasonable expectation of coverage. The language of the exclusion, traditionally construed most strictly against the insurance company, likewise does not clearly suggest that such statutory intentional torts are outside the ambit of coverage afforded by the policy. Indeed, similar insurance policy language has been repeatedly construed as requiring both an intentional act and an intentionally caused resulting injury. *Transamerica Ins Co, supra,* p 444, *Linebaugh, supra,* p 762, and *Allstate Ins Co, supra,* p 672.

In summary, the Wausau liability policy, as relevant to the present discussion, explicitly excludes from coverage injuries that are intentionally caused by the insured. In contrast, the WDCA exclusion allows an employee to bring suit against an employer where the employer committed a

deliberate act, specifically intending an injury, or where the employer "had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." When the policy exclusion and the language of the WDCA are placed side by side and compared, it is clear that an employee's injury may fall within the WDCA intentional tort exception and outside the policy exclusion. Regardless of the egregious nature of the insured's actions, see, e.g., *Buczkowski v Allstate Ins Co*, 447 Mich 669; 526 NW2d 589 (1994), the liability policy would afford coverage provided that the insured did not act by design to cause specific injuries, assuming that the injured party is able to demonstrate that the insured had actual knowledge that the party would, in fact, be so injured.

No actual facts having been litigated, it remains conceivable that the insurers in this case might be able to establish that the actions of the insured, Cavalier Manufacturing Company, with respect to Durand, did constitute a "true intentional tort." If so, the exclusionary clause is properly invoked. On the other hand, if the facts establish only that Cavalier Manufacturing Company was guilty of a statutory intentional tort within the legislatively crafted expansion of the concept of "intentional tort" in § 131 of the WDCA, as amended by 1987 PA 28, the exclusionary clause does not apply. Notwithstanding that the insurers, who come to this Court having prevailed on their motion for summary disposition, have alleged no facts that would indicate a true intentional tort, they nonetheless are entitled to an opportunity to amend their pleadings, if the facts justify such amendment. MCR 2.116(I)(5). Accordingly, the circuit court's order in this case, granting the insurers' motion

for summary disposition, is vacated, and the cause is remanded for further proceedings consistent with this opinion.

Order of summary disposition vacated and case remanded; this Court retains no further jurisdiction.